JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ANGIE GARCIA,<br><br>Debtor.<br><br>ANGIE GARCIA,<br><br>Appellant,<br><br>vs.<br><br>ORANGE COUNTY'S CREDIT UNION,<br><br>Appellee. | USDC Case No: SACV 10-0985-JST<br>BK Case No: 8:10-BK-10096-TA<br><br><br><br>**ORDER REVERSING AND REMANDING BANKRUPTCY COURT** |

1

1 | This is an appeal of an order denying debtor Angie Garcia's motion to avoid a
2 | nonpossessory, nonpurchase-money security interest in property claimed as exempt,
3 | pursuant to 11 U.S.C. § 522(f)(2)(B). Having read the briefs and heard oral argument, the
4 | Court REVERSES and REMANDS the case for further factual findings.

**I.     Issues**

1. May a debtor exempt a motor vehicle from the bankruptcy estate using California Civil Procedure Code section 703.140(b)(5)?

2. May a debtor use 11 U.S.C. § 522(f) to avoid a lien on a motor vehicle that is alleged to be a "tool of the trade" when the vehicle is exempted from the bankruptcy estate under California Civil Procedure Code section 703.140(b)(5)?

3. Has the debtor in this case, Angie Garcia, established that her vehicle qualifies as a "tool of the trade?"

**II.    Standard of Review**

The Court reviews de novo the bankruptcy court's conclusions of law, and reviews for clear error the bankruptcy court's findings of fact. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007). Whether or not a vehicle may be exempted under California's wildcard exemption[1] is a question of law. *Cf. Nazarene Federal Credit Union v. McNutt (In re McNutt)*, 87 B.R. 84, 85 (B.A.P. 9th Cir. 1988) (noting that whether or not a vehicle can be a "tool of the trade" within the meaning of 11 U.S.C. § 522(d)(6) was a question of law). Whether or not property that is properly exempted under California's wildcard exemption only can be considered a "tool of the trade" under 11 U.S.C. § 522(f) for purposes of lien avoidance is also a question of

---

1 The Court notes that the bankruptcy court used the term "grubstake" instead of the term "wildcard" to describe California Civil Procedure Code section 703.140(b)(5). The Court uses the term "wildcard" instead, as it is more commonly used to describe both section 703.140(b)(5) and the federal exemption on which it is modeled, 11 U.S.C. § 522(d)(5).

2

law. *See Owen v. Owen*, 500 U.S. 305, 313 (1991); *cf. In re McNutt*, 87 B.R. at 85 (noting that whether one may aggregate the "wildcard" exemption under 11 U.S.C. § 522(d)(5) with the "tools of the trade" exemption of 11 U.S.C. § 522(d)(6) for the purposes of lien avoidance is a question of law). Whether or not an implement or tool is used in a debtor's trade is a question of fact. *In re McNutt*, 87 B.R. at 85 (citing *In re Liming*, 797 F.2d 895, 902 (10th Cir. 1986)).

### III. Jurisdiction

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees from the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).

### IV. Background

Debtor Angie Garcia filed a voluntary chapter 7 petition for bankruptcy relief on January 5, 2010. Garcia requested and was granted permission to proceed *In Forma Pauperis* on the same day. On February 17, 2010, Garcia filed a motion to avoid the lien on her vehicle, a Mercedes-Benz, held by Respondent Orange County's Credit Union ("OCCU"). On February 19, 2010, the chapter 7 trustee filed a "No Asset" report stating that no property was to be liquidated during the case. On March 3, 2010, OCCU filed an opposition to Garcia's motion and requested a hearing. On April 20, 2010, Garcia retained counsel and filed a reply to OCCU's opposition. The bankruptcy court held a hearing on the matter on April 27, 2010 at which time the parties made arguments based on a tentative order denying Garcia's motion. The bankruptcy court requested supplemental briefing, which was filed by the parties on May 17 and 18, 2010. On June 8, 2010, the bankruptcy court entered its Statement of Decision in which the court adopted and expanded upon the tentative order denying Garcia's motion. The bankruptcy court's denial of Garcia's motion to avoid lien was entered as an order on July 14, 2010.

Garcia filed her notice of appeal on June 18, 2010 and elected to have her appeal transferred to the United States District Court. The bankruptcy court filed its Certificate of

Readiness of Record on Appeal on November 3, 2010. Garcia filed her opening brief with the Court on November 19, 2010, and OCCU filed its reply brief on December 3, 2010. On March 2, 2011, the Court dismissed the appeal without prejudice due to both parties' failure to comply with Local Rule Governing Bankruptcy Appeals 4.4 (8009-4.4) by failing to file excerpts of record. The parties refiled their briefs with the required excerpts of record on March 16, and 17, 2011, and the Court set this matter for May 23, 2011, to hear oral argument.

**V. Analysis**

**A. A Debtor May Exempt a Vehicle under California's Wildcard Exemption**

Generally, when a debtor files a chapter 7 petition for bankruptcy relief, all of the debtor's property becomes property of the bankruptcy estate. 11 U.S.C. § 541. However, the bankruptcy code also provides the debtor with a number of ways to exempt certain property from the bankruptcy estate and thus remove that property from distribution to creditors. 11 U.S.C. § 522(d). The Congressional intent in providing such exemptions was to allow debtors to emerge from bankruptcy with sufficient property to achieve the fundamental goal of the bankruptcy code, i.e., a financial "fresh start." *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918).

> The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefits of creditors. Our decisions lay great stress upon this feature of the laws-as one not only of private but of great public interest in that it secures to the unfortunate debtor,

4

1           who surrenders his property for distribution, a new opportunity in

2           life.

*Id.*

A state may "opt out" of the federal exemption scheme and deny the debtor the option of taking the exemptions under § 522(d). 11 U.S.C. § 522(b)(2). "[A] state that has opted out has considerable freedom in creating exemptions and eligibility requirements for those exemptions." *Granger v. Watson (In re Granger)*, 754 F.2d 1490, 1492 (9th Cir. 1985) (per curiam). "Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Owen v. Owen*, 500 U.S. 305, 308 (1991). In 1984, pursuant to the "opt out" provision, the California legislature enacted California Civil Procedure Code sections 703.130 and 703.140. *See Talmadge v. Duck (In re Talmadge)*, 832 F.2d 1120, 1122 (9th Cir. 1987). "Pursuant to the authority of paragraph (1) of subsection (b) of Section 522 of Title 11 of the United States Code, the exemptions set forth in subsection (d) of Section 522 of Title 11 of the United States Code (Bankruptcy) are not authorized in this state." Cal. Civ. Proc. Code § 703.130. Thirty-four states, including California, have opted out of the federal bankruptcy exemptions pursuant to section 522(b)(2). *See Sticka v. Applebaum (In re Applebaum)*, 422 B.R. 684, 688 (B.A.P. 9th Cir. 2009) (citing 4 *Collier on Bankruptcy*, ¶ 522.01[1]). Therefore, a debtor filing for bankruptcy under California law may not use the federal exemptions found in section 522(d).

Instead, debtors filing for bankruptcy under California law have two state-created sets of exemptions from which to choose: section 703.140 or section 704.010 *et seq.*, both of which can be found in California's Civil Procedure Code. *See id.* The exemptions set forth in section 703.140 are available only in cases brought under Title 11 of the United States Code, and are thus often called "bankruptcy-only" exemptions. *See id.* These exemptions are similar, but not identical, to the federal exemptions set forth in 11 U.S.C. § 522(d). *Compare* Cal. Civ. Proc. Code § 703.140(b) *with* 11 U.S.C. § 522(d). Unlike the bankruptcy-only exemptions in section 703.140, the exemptions set forth in section

704.010 *et seq.* apply to judgment debtors generally. *See In re Applebaum*, 422 B.R. at 688. A debtor may not pick and choose from the two sections, but must choose one or the other in filing his schedule with the bankruptcy court. Cal. Civ. Proc. Code § 703.140(a).

Here, Garcia chose to use the bankruptcy-only exemptions set forth in section 703.140. Garcia elected to use a combination of section 703.140(b)(1) and 703.140(b)(5) to exempt her Mercedes-Benz:

> (1) The debtor's aggregate interest, not to exceed seventeen thousand four hundred twenty-five dollars ($17,425) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.
>
> . . .
>
> (5) The debtor's aggregate interest, not to exceed in value nine hundred twenty-five dollars ($925) plus any unused amount of the exemption provided under paragraph (1), in any property.

Cal. Civ. Proc. Code § 703.140(b)(1), (5). The bankruptcy court expressed concern that Garcia used section 703.140(b)(5), rather than section 703.140(b)(2)'s exemption of up to $2,775 for "one motor vehicle," or section 703.140(b)(6)'s exemption of up to $1,750 for "tools of the trade." (Statement of Decision "SOD" at 6.) Additionally, the bankruptcy court noted that there is another exemption available under California law for a vehicle used "in the exercise of the trade, business or profession" in Article 3 of section 704.060 (the other set of exemptions available to judgment debtors generally). (SOD at 7.) Thus, the bankruptcy court implied that, because there are other exemptions that are explicitly available for a motor vehicle or tools of the trade, as a matter of law, a debtor may not exempt a motor vehicle or tool of the trade under section 703.140(b)(5). (SOD at 2, 7.)

6

"In analyzing § 703.140, [the Court is] bound by California rules of statutory interpretation, which require that courts 'give effect to statutes according to the usual, ordinary import of the language employed in framing them.'" *Little v. Reaves (In re Reaves)*, 285 F.3d 1152, 1156 (9th Cir. 2002) (quoting *Goldman v. Salisbury (In re Goldman)*, 70 F.3d 1028, 1029 (9th Cir. 1995) (per curiam) (quotation marks and citation omitted)). Under California law, a statute should be interpreted in light of its purpose. *See Little v. Reeves (In re Reaves)*, 256 B.R. 306, 310 (B.A.P. 9th Cir. 2000) (citing *San Francisco Foundation v. Superior Court*, 690 P.2d 1, 7 (Cal. 1984)). Thus, "[t]he exemption statutes are to be construed liberally, for their manifest purpose is that of saving debtors and their families from want by reason of misfortune or improvidence." *Id.* (internal citations and quotation marks omitted).

The plain language of the statute states that a debtor may use "any unused amount of the exemption provided under paragraph (1), in *any property*." Cal. Civ. Proc. Code § 703.140(b)(5) (emphasis added). Moreover, allowing a debtor to exempt a motor vehicle under the wildcard exemption is consistent with other bankruptcy decisions from the Ninth Circuit Bankruptcy Appellate Panel. In *In re Reaves*, Ninth Circuit Bankruptcy Appellate Panel allowed the debtor to use the wildcard exemption combined with the motor vehicle exemption, in order to exempt a Mercedes-Benz worth $15,350, holding that "[t]his statute is clear, straightforward, and is not ambiguous." 256 B.R. at 308, 313. Similarly, in *In re McNutt*, the Ninth Circuit Bankruptcy Appellate Panel allowed the debtor to aggregate the federal version of the wildcard exemption, 11 U.S.C. § 522(d)(5) with the federal version of the tools of the trade exemption, 11 U.S.C. § 522(d)(6), in order to exempt the full value of a pick-up truck. *In re McNutt*, 87 B.R. at 88. The Court has found no authority and can think of no reason why the aggregation of such exemptions should be permitted, but using only one of the exemptions (and thus exempting less value) should not be permitted. Thus, based on the plain language of the statute, the Court holds that, as a matter of law, a debtor may use section 703.140(b)(5) to exempt a vehicle.

## B. A Debtor May Avoid a Lien on a Motor Vehicle As a "Tool of the Trade" Under 11 U.S.C. § 522(f)

In keeping with Congressional intent in providing debtors with a "fresh start," section 522(f) of the federal bankruptcy law prevents "overreaching creditors from diluting this fresh start through unfavorable reaffirmation on debts that were secured by otherwise exempt property."[2] Jeffrey Martin Zitron, *Recent Developments in Bankruptcy Law*, 2 Emory Bankr. Dev. J. 41, 45 n.31 (1985) (citing H.R. No. 595, 95th Cong. 1st Sess., 127 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6087-88). In other words, the bankruptcy code allows a debtor to ask the court to void certain liens or portions of liens on exempt property.

> **(1)** Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--

---

2 As recently was explained by the Supreme Court:
> Property that is properly exempted under § 522 is (with some exceptions) immunized against liability for prebankruptcy debts. 11 U.S.C. § 522(c). No property can be exempted (and thereby immunized), however, unless it first falls *within* the bankruptcy estate. Section 522(b) provides that the debtor may exempt certain property "from property of the estate"; obviously, then, an interest that is not possessed by the estate cannot be exempted. Thus, if a debtor holds only bare legal title to his house-if, for example, the house is subject to a purchase-money mortgage for its full value-then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder, § 541(d). And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property. Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder. This was the rule of *Long v. Bullard,* 117 U.S. 617 (1886), codified in § 522. Only where the Code empowers the court to avoid liens or transfers can an interest originally not within the estate be passed to the estate, and subsequently (through the claim of an exemption) to the debtor.

*Owen v. Owen*, 500 U.S. 305, 308-09 (1991).

**(A)** a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5); or

**(B)** a nonpossessory, nonpurchase-money security interest in any--

    **(i)** household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

    **(ii)** implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

    **(iii)** professionally prescribed health aids for the debtor or a dependent of the debtor.

**(2)(A)** For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--

    **(i)** the lien;

    **(ii)** all other liens on the property; and

    **(iii)** the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

**(B)** In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

**(C)** This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

**(3)** In a case in which State law that is applicable to the debtor--

> > **(A)** permits a person to voluntarily waive a right to claim exemptions under subsection (d) or prohibits a debtor from claiming exemptions under subsection (d); and
>
> > **(B)** either permits the debtor to claim exemptions under State law without limitation in amount, except to the extent that the debtor has permitted the fixing of a consensual lien on any property or prohibits avoidance of a consensual lien on property otherwise eligible to be claimed as exempt property;
>
> the debtor may not avoid the fixing of a lien on an interest of the debtor or a dependent of the debtor in property if the lien is a nonpossessory, nonpurchase-money security interest in implements, professional books, or tools of the trade of the debtor or a dependent of the debtor or farm animals or crops of the debtor or a dependent of the debtor to the extent the value of such implements, professional books, tools of the trade, animals, and crops exceeds $5,850.

11 U.S.C. § 522(f).

Here, Garcia moved to avoid OCCU's lien on her Mercedes-Benz under section 522(f)(1)(B)(ii), claiming that her vehicle was a "tool of the trade." The bankruptcy court appears to have held as a matter of law that 11 U.S.C. § 522(f)(1)(B) may not apply to motor vehicles, because it is contrary to the language of the statute and Congressional intent. (SOD at 7.) The bankruptcy court also appears to have held as a matter of law, that when a debtor exempts property from the bankruptcy estate under California Civil Procedure Code section 703.140(b)(5), the debtor may not also avoid liens under 11 U.S.C. § 522(f)(1)(B). (SOD 2-3, 5). The court held that Congress did not intend to allow debtors in California to avoid liens of up to $19,000 in non-possessory, non-purchase money security interests. (*Id.* at 5.)

The Court disagrees on both counts. First, the Court holds that a motor vehicle can be considered a "tool of the trade" for purposes of federal lien avoidance under 11 U.S.C. § 522(f). The bankruptcy court's reasoning was rejected by the Ninth Circuit in *In re Taylor*, which held that although courts are divided, "[l]ien avoidance on motor vehicles as tools of the debtor's trade . . . is generally allowed in situations where the vehicle is necessary to the debtor's trade, and the state has opted out of the federal laundry list . . . ." *Rainer Equipment Finance, Inc. v. Taylor (In re Taylor)*, 861 F.2d 550, 552-53 (9th Cir. 1988).

Indeed, there are a number of cases in which the Ninth Circuit Bankruptcy Appellate Panel has permitted lien avoidance under 11 U.S.C. § 522(f)(1)(B)(ii) when the debtor has claimed that a vehicle was a "tool of the trade." *See, e.g.*, *In re Reaves*, 256 B.R. 306; *Havas Leasing Co. v. Breen (In re Breen)*, 123 B.R. 357 (9th Cir. B.A.P. 1991); *In re McNutt*, 87 B.R. 84. Although there are cases which would limit the concept of a "tool" to a small or manually operated device, *see In re Harrell*, 72 B.R. 107 (Bankr. N.D. Ala. 1987), the Court is persuaded by the reasoning set forth by the Ninth Circuit Bankruptcy Appellate Panel: "it must be recognized that trades and uses of implements change and evolve; prior definitions and concepts should be consistent with changes in technology and trades." *In re McNutt*, 87 B.R. at 87. Thus, the Court agrees with the Ninth Circuit Bankruptcy Appellate Panel's adoption of the "emerging rule" that a motor vehicle may be considered a tool of the trade if it is necessary to, and is used by the debtor to carry on his or her trade. *Id.*; *cf. In re Gaydos*, 441 B.R. 102, 106 (Bankr. N.D. Ohio 2010) ("It appears, however, that the majority of courts that have considered the issue hold that a motor vehicle can be exempted as a 'tool of the trade.'"). Moreover, in light of the Court's responsibility to construe exemptions liberally in favor of the debtor, the Court determines that the fact that there is a motor vehicle exemption separate from the "tool of the trade" exemption does not, per se, preclude a motor vehicle from being a "tool of the trade."

Second, the Court holds that how a debtor exempts property from the bankruptcy estate does not affect whether it is, in fact, a "tool of the trade." In other words, the fact that Garcia could have exempted her Mercedes-Benz in full by aggregating California's "tool of the trade" exemption with either the motor vehicle exemption or the wildcard exemption, but instead chose to exempt it using her wildcard exemption alone, has no effect on the test courts use to determine whether property is a "tool of the trade." Although the bankruptcy court was concerned that this would permit a debtor to avoid liens up to the full amount permitted under California's wildcard exemption, the Supreme Court has repeatedly recognized, and held as constitutionally permissible, that in allowing states to define bankruptcy exemptions, the federal bankruptcy code will function differently in different states.

> Notwithstanding [the Constitutional] requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the state in certain particulars, although such recognition may lead to different results in different states. . . . Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the Act is not alike in all the states.

*Stellwagen v. Clum*, 245 U.S. 605, 613 (1918). Thus, the Supreme Court recently held that "[n]othing in the text of § 522(f) remotely justifies treating [state and federal] exemptions differently. . . . [I]t is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created." *Owen*, 500 U.S. at 313.

Finally, the Court rejects the argument that the correlation between the language of 11 U.S.C. § 522(f)(1) and the specific exemptions of 11 U.S.C. § 522(d)(3), (4), and (9) means that lien avoidance is strictly limited to the specific exemptions listed in section 522(d) or their state-equivalents. The Court is persuaded by the reasoning in *In re McNutt*: "Had Congress intended that lien avoidance should be limited under those circumstances,

12

it would have clearly expressed that intention. We also note the Bankruptcy Code has been amended twice since 1978 and no changes have been made to the provisions of 11 U.S.C. § 522(f)." 87 B.R. at 88 (internal citations omitted).

### C. Debtor Must Establish That Her Vehicle Qualifies as a "Tool of the Trade" to Qualify for Lien Avoidance Under 11 U.S.C. § 522(f)

As noted above, 11 U.S.C. § 522(f)(1)(B)(ii) permits a debtor to avoid a lien if it impairs a valid exemption and if the lien is a nonpossessory, nonpurchase-money security interest in any tool of the trade. OCCU concedes that the lien is a nonpossessory, nonpurchase-money security interest.3 (Appellee's Reply Br., Doc. 19, at 6.) The Court has set forth above its determination that Garcia's exemption is valid under California Civil Procedure Code section 703.140(b)(5); thus, the enforcement of the lien would impair a valid exemption. Garcia has not yet established, however, that her vehicle is a tool of her trade.

In her initial briefing, Garcia alleged that she was a realtor and that her Mercedes-Benz was a "tool of the trade." In determining whether a vehicle is a tool of the trade, "the proper inquiry is whether or not the vehicle is used by and is necessary to a debtor for his or her work, trade or occupation. . . . A vehicle may be necessary to and used by the debtor regardless of whether or not it is specifically outfitted for the debtor's trade." *In re McNutt*, 87 B.R. at 87 (citing *In re Goosey*, 10 B.R. 285, 286 (Bankr. D. Neb. 1981)).

---

3 The Ninth Circuit, noting that the term "purchase money security interest" is not defined in the bankruptcy code, uses the definition of property interests set forth by state law. *Americredit Fin. Svcs., Inc. v. Penrod (In re Penrod)*, 611 F.3d 1158, 1161 (9th Cir. 2010). In determining California's definition of a purchase money security interest, the Ninth Circuit wrote:
> In plain English, a purchase money security interest arises when a person buys a good and the seller (if a dealer financed transaction) or lender (if the sale is financed by a loan) retains a security interest in that good for all or part of the price. Purchase money security interests have long been favored at law, and enjoy "super-priority" rights over other types of security interests and liens.

*Id.* (citing Grant Gilmore, *The Purchase Money Priority,* 76 Harv. L. Rev. 1333 (1963)).

"Whether or not an implement is used in a debtor's trade is a question of fact." *In re McNutt*, 87 B.R. at 85 (citing *In re Liming*, 797 F.2d 895, 902 (10th Cir. 1986)). Normally, this Court reviews the bankruptcy's findings of fact for clear error. However, the bankruptcy court does not appear to have focused on any of the factual issues at the hearing or in its Statement of Decision, instead deciding the case as a matter of law.

Because the hearing conducted by the bankruptcy court in this matter primarily concerned the issue of whether an automobile, per se, may be exempted as a tool of a debtor's trade and relatedly, whether it was eligible as such for lien avoidance under 11 U.S.C. § 522(f), the Court remands the case to the bankruptcy court to conduct an evidentiary hearing to determine whether the Mercedes-Benz meets the test set forth above.

**VI. Conclusion**

For the foregoing reasons, the Court REVERSES and REMANDS the case.

DATED: May 25, 2011

_____
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE